FILED

2011 Mar-22  PM 02:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS TODD MARTIN, III,** | ) | |
| **MARY W. MARTIN, and** | ) | |
| **AFFORDABLE HOMES OF** | ) | |
| **MIDTOWN ATLANTA** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **v.** | ) | **CV-09-J-01788-S** |
| | ) | |
| **WACHOVIA BANK, NATIONAL** | ) | |
| **ASSOCATION AND WELLS** | ) | |
| **FARGO BANK, NATIONAL** | ) | |
| **ASSOCIATION** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## MEMORANDUM OPINION

### Procedural Background

Pending before this court is defendant Wells Fargo's motion for partial summary judgment with evidentiary materials (doc. 47), and brief in support (doc. 48), against plaintiffs, Thomas Martin ("Martin") and Affordable Homes of Midtown Atlanta, L.L.C. ("AHOMA"), as well as Robert Randall ("Randall"), Selwyn Turner, and Elizabeth Turner, herein referred to as the "Obligors"; the Obligors' response in opposition (doc. 51); and defendant's reply (doc. 52).

1

## Factual Background

Plaintiff Todd Martin owns several hardware stores in the Mobile area. Mr. Martin also owns companies that develop commercial and residential real estate in Alabama, Florida and Georgia, including interests in entities like plaintiff AHOMA.  First Amended Compl., ¶ 11 (doc. 17).

Defendant Wachovia Bank, National Association ("Wachovia Bank"), is a corporation incorporated under the laws of the State of North Carolina with its principal place of business at 301 South College Street, Raleigh, North Carolina 27603.  Defendant Wells Fargo Bank, National Association ("Wells Fargo"), is a corporation incorporated under the laws of the State of California with its principal place of business at 464 California Street, San Francisco, California 94104.  Wells Fargo is the successor in interest to Wachovia Bank after their merger.  First Amended Compl., ¶ 4-6 (doc. 17).

Prior to 2006, Todd and Mary Martin had enjoyed a long banking relationship with AmSouth Bank.  They maintained brokerage accounts at several brokerages, including Legg Mason, Morgan Keegan, A.G. Edwards and AmSouth Bank.  These accounts contained assets totaling approximately $3 million.  The Martins' broker at Legg Mason was Charlie Bailey ("Bailey").  During 2006

2

Bailey left Legg Mason and joined Wachovia Securities, LLC. Shortly after joining Wachovia Securities, Bailey began pitching Wachovia Bank's services to Martin.  First Amended Compl., ¶ 12-13 (doc. 17).  The Martins agreed to move the vast majority of their financial product business to Wachovia Bank and its affiliated companies. The Martins consolidated all of their brokerage accounts with Bailey at Wachovia Securities and moved all of their checking and savings accounts to Wachovia Bank.  *Id.*, ¶ 19 (doc 17).  In 2005 the Martins sold their limited partnership units in the ServiceMaster business back to the company for $10 million and deposited that with Wachovia Bank.  *Id.*, ¶ 20-21 (doc. 17).  That sales transaction was not completed until some time in 2006 after the Martins had established their banking and brokerage relationship with Wachovia.  *Id.*, ¶ 22 (doc. 17).

According to the Martins, based on representations made by Wachovia Bank regarding their ability to provide the condominium conversion financing as well as the end purchaser financing, AHOMA decided to finance their condominium project in Atlanta with Wachovia Bank.  The AHOMA project appraised for $12 million in 2008.  The Martins claim that Wachovia Bank failed to provide the end-purchaser financing for this project, and that because of Wachovia Bank's financing inabilities, AHOMA was unable to sell the units as

condominiums before the current economic downturn.  And with the inability to sell the condominiums, AHOMA converted the project back to apartments.  First Amended Compl., ¶ 41 (doc. 17).

AHOMA entered into a Construction Loan Agreement ("Loan") dated August 22, 2007, in the amount of $7,425,000 with Wachovia.  Answer to Amended Complaint & Counterclaim, Ex. A (doc. 23).  The Loan extended to AHOMA is further evidenced by a promissory note (the "Note") dated August 22, 2007.  *Id*., Ex. B (doc. 23).  The Loan is secured by a Deed to Secure Debt, Assignment of Rents, and Security Agreement ("Deed") given by AHOMA to Wachovia dated August 22, 2007, and recorded on August 23, 2007.  The Deed grants to Wachovia a first priority security title, interest and lien in and to all real and personal property more commonly referred to as Berkley Park, a 130-unit condominium conversion project on Howell Mill Road in Atlanta, Georgia.  *Id.*, Ex. C (doc. 23).

The Loan is further secured by several guaranty agreements.  An Unconditional Guaranty Agreement dated August 22, 2007, was given by Todd Martin to Wachovia ("Martin Guaranty").  Answer to Amended Complaint & Counterclaim, Ex. D (doc. 23).  An Unconditional Guaranty Agreement dated August 22, 2007, was given by Robert Randall to Wachovia ("Randall Guaranty").

*Id.*, Ex. E (doc. 23). An Unconditional Guaranty Agreement dated August 17, 2007, was given by Charles Starnes to Wachovia ("Starnes Guaranty"). An Unconditional Guaranty Agreement dated August 17, 2007 was given by George Sheild to Wachovia ("Sheild Guaranty"). *Id.*, ¶ 10 (doc. 23). An Unconditional Guaranty Agreement dated August 22, 2007, was given by Selwyn Turner to Wachovia (the "Selwyn Turner Guaranty"). Finally, an Unconditional Guaranty Agreement dated August 22, 2007, was given by Elizabeth Turner to Wachovia (the "Elizabeth Turner Guaranty"). *Id.*, Ex. F (doc. 23). Charles Starnes and George Sheild no longer have obligations to Wachovia. Todd Martin, Robert Randall, Selwyn Turner, and Elizabeth Turner are referred to herein as the "Guarantors." The Loan, Note, Deed, Assignment, and the Unconditional Guaranty Agreements referenced above are referred to herein, collectively, as the "Loan Documents."

According to the Martin Guaranty, Martin's liability for guaranteed obligations would be the:

> sum of (i) fifty percent (50%) of the stated principal balance of the Loan (the "Guaranteed Principal Amount"), plus (ii) accrued and unpaid interest, calculated at the interest rate then in effect under the Note, owing on the Guaranteed Principal Amount at the time an Event of

Default occurs (the sum of (i) and (ii) is referred to herein as the "<u>Base</u> <u>Gauranty Amount</u>"), plus (iii) accrued and unpaid interest on the Base Guaranty Amount, calculated at the Default Rate from the occurrence of the Event of Default until paid, plus (iv) costs of collection, including reasonable attorneys' fees.

Answer to Amended Complaint & Counterclaim, Ex. D at ¶ 2(a) (doc. 23) (emphasis in original). According to the Randall Guaranty, Randall's liability for the guaranteed obligations is the same as for Todd Martin. *See Id*., Ex. E at ¶ 2(a) (doc. 23). According to the Selwyn Turner Guaranty and the Elizabeth Turner Guaranty, Selwyn Turner's and Elizabeth Turner's liability, jointly and severally, for the guaranteed obligations is 15% instead of the 50% for Martin and Randall, with the remaining language of the provision being the same. *See Id*., Ex. F at ¶2(a) (doc. 23).

In February of 2009 Wachovia and the Obligors entered into a Forbearance Agreement. Answer to Amended Complaint & Counterclaim, Ex. G (doc. 23). In the Forbearance Agreement, the Obligors warranted that as of February 19, 2009, the outstanding principal amount of the Note, plus accrued and outstanding interest and late charges was $7,385,561.63; the total amount of accrued and unpaid interest was $159,715.24; and the amount of accrued attorneys' fees and

expenses was $3,500.  *Id.*, Ex. G at ¶ 1(a)-(d) (doc. 23).  The Forbearance

Agreement contained the following release clause:

> In consideration of the Lender entering into this Agreement, and without
> any contingency, precondition, or condition subsequent, the Obligors,
> for themselves and their respective heirs, executors, successors and
> assigns, do hereby jointly and severally fully and forever release,
> relinquish, discharge, settle and compromise any and all claims, cross-
> claims, counterclaims, causes, damages and actions of every kind and
> character, and all suits, costs, damages, expenses, compensation and
> liabilities of every kind, character and description, whether direct or
> indirect, known or unknown, in law or in equity, which either of them
> had or will have against Lender, its subsidiaries, affiliates, officers,
> directors, shareholders, agents, attorneys, professionals, representatives,
> contractors, predecessors, successors and assigns, both present and
> former, on account of, arising, or resulting from, or in any manner
> incidental to, any and every thing or event occurring or failing to occur
> at any time in the past up to and including the date hereof, including,
> without limitation, any claims relating to the Loan, the Loan documents,
> the Collateral, the Existing Events of Default, this Agreement, any act
> and event relating to Lender's administration of the Loan, or any other
> transaction contemplated by this Agreement.

*Id.*, Ex. G at ¶ 22 (doc. 23).  In exchange for this release, Wachovia agreed to

forbear from enforcement of rights and remedies available to it.  *Id.*, Ex. G, § II.B.

(doc. 23).

On September 8, 2009, Wachovia sent a Notice of Termination Event and

Reservation of Rights letter to Obligors due to "failure to pay the July and August

monthly installments of interest."  Answer to Amended Complaint &

Counterclaim, Ex. H (doc. 23).  The Obligors contend that Trey Sipe[1] was aware of the missed interest payments but had previously instructed AHOMA to focus on renovations and raising occupancy rates during those months rather than focus on making interest payments.  Turner Aff., ¶ 17 (doc. 51).  Sipe met with Selwyn Turner on September 1, 2009.  At that meeting, Turner gave Sipe a $25,000 past-due interest payment.  Turner Aff., ¶ 19, Ex. 5 (doc. 51).  Sipe also stated during the meeting that Wachovia expected to receive $25,000 per month as interest payments for AHOMA.  *Id*., ¶ 19 (doc. 51).  Those payments were made every month after that.  *Id*., ¶ 20, Ex. 6 (doc. 51).  The Obligors contend that at no time during that meeting did Wachovia represent that they considered the Forbearance Agreement terminated.  Martin Aff., ¶ 31 (doc. 51); Turner Aff., ¶ 23, Ex. 7 (doc. 51).

During the meeting, the parties discussed finding an exit strategy for the AHOMA lending relationship.  Wachovia also indicated they wanted the Obligors to provide additional collateral.  Martin Aff., ¶ 32 (doc. 51); Turner Aff., ¶ 23, Ex. 7 (doc. 51).  In October 2009 the Obligors sent a loan proposal to Sipe that would have refinanced the original loan for $7.2 million for five years and provided

---

[1] Trey Sipe is the vice president of Wells Fargo Bank's Special Situations Group – Domestic Strategies Group.  Reply to Plaintiff's Response to Wells Fargo's Motion for Summary Judgment, Ex. 1 at ¶ 2 (doc. 52).

additional collateral to the bank.  Wachovia rejected this proposal.  Martin Aff., ¶ 34, Ex. 3 (doc. 51); Turner Aff., ¶ 24, Ex. 8 (doc. 51).

The Obligors contend that when the February 28, 2010, expiration date of the Forbearance Agreement came and went, Wachovia never notified them that it considered the Forbearance Agreement to have expired, and the parties continued as if the agreement were still in full force and effect.  Turner Aff., ¶ 29 (doc. 51).

In May 2010 and continuing through June 2010, the Obligors claim Sipe began to pressure them to agree to a deed in lieu of foreclosure.  Selwyn Turner then approached a HUD office, Banks and Associates, and spent $43,000 on the HUD engagement and consulting agreement.  Turner Aff., ¶ 30, 32 (doc. 51).  In May 2010 Wachovia presented the Obligors with two exit strategy options.  One was a friendly foreclosure with a guaranteed maximum loan deficiency of $300,000.  The other was a short sale with a guaranteed maximum loan deficiency of $300,000.  Turner Aff., ¶ 33, Ex. 12 (doc. 51).  In early July 2010 Wachovia presented a third option, giving the Obligors 45 days to purchase the note for $5,750,000 with a fee of $50,000 and an agreement the Obligors would satisfy a $200,000 tax lien.  Turner Aff., ¶ 35, Ex. 12 (doc. 51).  The Obligors went to a conventional lender for interim financing since they could not get HUD financing in 45 days.  The interim financing would take 90 days.  The Obligors claim that in

9

addition to money spent during June and July, they spent $12,200 during August 2010 on efforts to refinance, bringing them to a total of $54,000. Turner Aff., ¶ 36 (doc. 51). The Obligors paid all outstanding taxes on the property totaling $358,379, rather than $200,000. Turner Aff., ¶ 39, Ex. 14 (doc. 51). In December 2010 the Obligors claim that they made a proposal to Wachovia to refinance with RBC Bank for $5,000,000 in addition to them paying all outstanding property taxes, for a total of $5,350,000. The Obligors also claim that Wachovia did not respond to this offer. Turner Aff., ¶ 41, 42, Ex. 15 (doc. 51).

In the first amended complaint, plaintiffs brought forth 16 counts against defendant, 5 of which relate to AHOMA. (Doc. 17). These counts arise from the allegation that Wachovia failed to provide condominium conversion financing and end-user financing for the AHOMA project. First Amended Compl., ¶ 123-160 (doc. 17).

In its counterclaim, defendant asserts that AHOMA is in default of its performance under the Loan Documents. Answer to Amended Complaint and Counterclaim, ¶ 26-29 (doc. 29). Additionally, defendant asserts that Todd Martin, Selwyn Turner, Elizabeth Turner, and Robert Randall are in default of the obligations owing under certain guaranty agreements. *Id.*, ¶ 31, 33 (doc. 29).

Defendant contends that as of January 11, 2011, the outstanding principal

amount of the note, plus accrued and unpaid interest, was $7,479,823.39; the total amount of accrued and unpaid interest was $256,521.64; the amount of late fees was $3,604.18; $7,800 in third party reporting fees; and accrued attorneys' fees and expenses was $33,603.70.  Sipe Decl., ¶ 7-8 (doc. 47).

## Summary Judgment Standard

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* Fed. R. Civ. P. 56; *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).  The non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or merely be colorable.  *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249050, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a genuine issue of fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## Choice of Law

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Colonial Life & Accident Ins. Co., v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004).  "Alabama applies the traditional doctrine of *lex loci contractus* to contract claims and *lex loci delicti* to tort claims."  *Id*.  The doctrine of *lex loci contractus* provides that "a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction."  *Id*. (*citing Cherry, Bakaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala. 1991)).  In this matter, the documents executed by the parties provide that disputes are to be governed by Georgia law.  Memorandum of Law in Support of Motion for Partial Summary Judgment, Ex. B at ¶ 21(b), Ex. C-E at ¶ 11(c), and Ex. F at  ¶ 34.

"The doctrine of *lex loci delicti*, on the other hand, requires the court to 'determine the substantive rights of an injured party according to the law of the state where the injury occurred.'" *Colonial Life*, 358 F.3d at 1308 (*citing Fitts v.*

12

*Minnesota Mining & Mfg. Co.*, 581 So.2d 819, 820 (Ala. 1991)).  Counts XII

through XV of plaintiff's complaint relate to AHOMA and sound in tort.  Any

alleged injury resulting from conduct averred in those counts would have been

felt, if at all, in Georgia.


### Legal Analysis

I.    *Forbearance Agreement.*

Defendant, Wells Fargo, has moved for partial summary judgment to

dismiss the claims, counts XII through XVI of the First Amended Complaint,

against defendant.  Further, defendant has moved for partial summary judgment on

its claims against AHOMA and the Guarantors as set out in the defendant's

Answer & Counterclaim (doc. 29).  For the following reasons, the court has found

that there are no genuine issues of material fact, and therefore, defendant's motion

for partial summary judgment shall be granted on all counts.


A.  *Counts XII through XVI of the Amended Complaint Against Defendant.*

"In Georgia, a release is subject to the same rules as govern ordinary

contracts in writing, and parol evidence is not admissible to contradict or vary the

terms or stipulations."  *Wyatt v. Hertz Claim Mgmt. Corp.*, 511 S.E.2d 630, 632

(Ga. Ct. App. 1999)(*quoting Thomaston v. Fort Wayne Pools*, 352 S.E.2d 794 (Ga Ct. App. 1987)).  "Parties to a contract are presumed to have read their provisions and have understood the contents.  One who can read, must read, for he is bound by his contracts."  *Id*. (*quoting O'Brien Family Trust v. Glen Fall, Ins. Co.*, 461 S.E.2d 311 (Ga. Ct. App. 1995)).  To show that Georgia upholds these types of releases, defendant cites to *Suwannee Swifty Stores, Inc. v. NationsBank, N.A.*, 536 S.E.2d 299 (Ga. Ct. App. 2000)(Suwanee Swifty Stores released any claims against the bank in exchange for the bank's agreement to forbear exercising its security rights against certain collateral).

The Obligors do not challenge the existence and validity of the Loan Documents and, more importantly, the Forbearance Agreement.  Here, the Forbearance Agreement states that the plaintiffs have released defendant from all claims arising out of the Loan, ensuing default, and the Forbearance Agreement itself.  Since counts XII through XVI relate to the Loan, Georgia law provides that the Forbearance Agreement shall be enforced and the plaintiffs' claims dismissed. Additionally, as discussed below in section II.B., there was no anticipatory breach by defendant, and therefore, the Forbearance Agreement and the paragraph 22, release provision remain in force.  Thus, defendant's motion for partial summary judgment shall be granted on counts XII through XVI in plaintiffs' First Amended

14

Complaint against defendant.

B.  *Defendant's Counterclaim Against AHOMA.*

A promissory note is an enforceable contract, and "a creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense."  *Georgia Investments Int'l v. Branch Banking and Trust Co.*, 700 S.E.2d 662, 664 (Ga. Ct. App. 2010); *Hovendick v. Presidential Financial Corporation*, 497 S.E.2d 269, 271 (Ga. Ct. App. 1998).  The Obligors do not deny that they executed the Loan and Note, that they defaulted on the Loan, or that they executed the Forbearance Agreement.  The Forbearance Agreement states that "the Loan, the Past Due Interest, and the Attorneys' Fees are due and payable in full without offset, defense, or reduction, and [defendant] is free to exercise any and all of its rights and remedies under the Loan Document."  Motion for Partial Summary Judgment, Ex. F at § 2, ¶ 1(f)(doc. 47).  After a termination event occurred under the terms of the Forbearance Agreement, defendant made a demand of payment on the Obligors, which the Obligors have failed to meet.  The existence and validity of the Loan and Note, defendant's performance, and the default by the Obligors establishes a prima facie right to recover for defendant.  And as shown below in section II.A., promissory or

15

equitable estoppel is not a valid defense, in this case, to defendant's prima facie right to recover.  Further, the Forbearance Agreement provides that the Obligors waived any defenses or entitlement to offset in regards to the Loan documents. Thus, defendant is entitled to summary judgment on its claims against AHOMA.

## C.  Defendant's Counterclaim Against the Guarantors.

Under Georgia law, guaranty agreements are enforceable so long as they are in writing and signed by the party guaranteeing the debt.  GA. CODE ANN. § 13-5-30; *see also Ades v. Werther*, 567 S.E.2d 340, 344 (Ga. Ct. App. 2002).  The Guarantors admit to executing the guaranty agreements, which provide that "Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of Borrower to Bank..."  Motion for Partial Summary Judgment, Ex. C-E, p. 1 (doc. 47).  Further, the Guarantors signed the Forbearance Agreement, and therefore, have waived any claims or defenses relating to money owed under the Loan.  The Guarantors have failed to honor the guaranty agreements, which has damaged defendant.  Thus, defendant's motion for partial summary judgment on the claims against the Guarantors is due to be granted.

16

II.    *Plaintiff's Arguments in Opposition Do Not Effect Validity of Forbearance Agreement.*

A.  *Promissory and Equitable Estoppel Do Not Bar Termination of Forbearance Agreement.*

The Obligors attempt to argue that defendant can not terminate the

Forbearance Agreement because of promissory or equitable estoppel.  In support

of its promissory estoppel argument, the Obligors cite to the following case setting

forth the elements of promissory estoppel:

> (1) the defendant made a promise or promises; (2) the defendant should
> have reasonably expected the plaintiffs to rely on such promise; (3) the
> plaintiffs relied on such promise to their detriment; and (4) an injustice
> can only be avoided by the enforcement of the promise, because as a
> result of reliance, plaintiffs changed their position to their detriment by
> surrendering, forgoing, or rendering a valuable right.

*Brown v. Rader*, 683 S.E.2d 16, 21 (Ga. Ct. App. 2009).  In order to support a

claim of equitable estoppel, the Obligors must show that they reasonably acted

upon a representation of another party leading to detrimental results.  *Georgia

Investments Int'l, Inc. v. Branch Banking & Trust Co.*, 700 S.E.2d 662, 664 (Ga.

Ct. App. 2010).

"Promissory estoppel does not, however, apply to vague or indefinite

promises, or promises of uncertain duration."  *Id.* ("Although BB & T's alleged

promises contemplated a loan for a certain duration, the promise was vague and indefinite as to other material terms"). In this case, defendant never even made a promise/representation that rose to the level of a vague or indefinite promise. Here, the defendant made no promise at all, it was non-existent. Trey Sipe denies having ever promised an extension of the February 28, 2010, termination date of the Forbearance Agreement. Further, defendant sent the September 8, 2009, letter to plaintiff informing them that a termination event had occurred under the terms of the Forbearance Agreement. The Obligors contend that by continuing to accept the interest payments, that created an expectation that the Forbearance Agreement was still in effect. The court rejects that argument. The Obligors had a duty to make those payments under the Loan and Note, and the Deed stated that acceptance of partial payments did not constitute a waiver of default. Answer to First Amended Complaint, Ex. C at ¶ 21(a)(i) (doc. 29). Further, defendant's position was reemphasized in a June 17, 2010, letter indicating that a voluntary forbearance would not limit the rights – to sue or foreclose on the collateral – defendant maintained after the termination of the Forbearance Agreement:

> [Defendant] hereby reserves all of its rights and remedies under the Forbearance Agreement, Loan Documents, at law, and in equity...Voluntary forbearance by [defendant] in the exercise of such rights shall not waive or limit the subsequent exercise of such rights.

Selwyn Turner Aff., Ex. B, Ex. 10 (doc. 51).

In addition to there being no promise made to the Obligors, there was no detriment to the Obligors by making interest payments or expending money looking for alternative financing.  For the same reasons stated above, the Obligors had a duty under the Loan documents to make those interest payments, and there was nothing in the Forbearance Agreement or elsewhere that changed that duty. As for the money spent by the Obligors in search of alternative financing, that duty already existed as well for the duration of the Forbearance Agreement.  Motion for Partial Summary Judgment, Ex. F at ¶ 4(f)(doc. 47)("the Obligors shall use their best efforts to obtain alternative financing and consummate such transaction so that the Loan Documents are paid in full by the Forbearance Termination Date"). For these reasons, even if defendant had made a promise or representation, the Obligors did not rely on it to their detriment.

*B.  No Anticipatory Breach of the Forbearance Agreement.*

Under Georgia law, performance under a contract can be excused by another party's repudiation.  *Jinright v. Russell*, 182 S.E.2d 328, 330 (Ga. Ct. App. 1971)("when it is made apparent to one party that the other party will not carry out its obligations even if all conditions were to be performed, then such performance

is excused.  A repudiation or other total breach relieves performance of conditions precedent").  The Obligors attempt to apply *First National Mortgage Co. v. Federal Realty Investment Trust*, __ F.3d__ 2011, WL 294043 (9th Cir. 2011) to the facts of this case.  However, in *First National*, one of the parties, claiming that there was not a final contract, refused to satisfy its obligations under the agreement.  The court disagreed and found that there had been an anticipatory breach and that First National was entitled to recover the loss of the bargain represented by the contract.  In this case, defendant never claimed that the Forbearance Agreement was not a valid contract.  Nor has defendant failed to fulfill its obligations under the Forbearance Agreement, including not exercising its right to sue the Obligors for default on the Loan.  Once the Forbearance Agreement expired, defendant was free to exercise its original right to sue on the default.  The Obligors have not brought forth substantial evidence to show that a repudiation or anticipatory breach occurred.  Thus, the Forbearance Agreement, and specifically the release language in paragraph 22, is still valid and in force.

*C.  No Failure to Mitigate.*

The Obligors contend that defendant failed to mitigate damages for a breach of contract as required under Georgia law.  *See Boone v. Atlanta Indep. Sch. Sys.*,

20

619 S.E.2d 708, 712 (Ga. Ct. App. 2005); GA. CODE ANN. § 13-6-5 ("Where by a breach of contract a party is injured, he is bound to lessen the damage as far as practicable by the use of ordinary care and diligence").  The Obligors also contend that none of the three exceptions to the duty to mitigate in breach of contract claims applies:

> Georgia courts have recognized three exceptions to the duty to mitigate damages in breach of contract actions: (1) fraud; (2) breach of an express warranty; and (3) an "absolute promise to pay."

*Wachovia Bank of Ga., N.A. v. Namik*, 620 S.E. 2d 470, 474 (Ga. Ct. App. 2005). Defendant argues that the third exception, an absolute promise to pay, does apply to promissory notes and guaranty agreements.  However, the Obligors cite to *General Elec. Capital Corp. v. Nucor Drilling, Inc.*, 551 F.Supp.2d 1375 (M.D. Ga. 2008), where the court found that none of the exceptions to the duty to mitigate applied and there was a genuine issue of material fact.  In that case, Nucor defaulted on a $1.8 million loan, which was executed with a *promissory note, security agreement, and personal guaranty*, similar to this case.  Therefore, Georgia Courts have found that a note is not an "absolute promise to pay" for purposes of the exception to the duty to mitigate rule.

The next question then is whether defendant reasonably mitigated its damages.  The Obligors again attempt to use the *General Electric* case, where the

court found a genuine issue of material fact, to show that defendant failed to reasonably mitigate damages.  However, in *General Electric*, the court did grant summary judgment as to the liability of Nucor under the note, and therefore, Nucor was liable for the full amount of the loan, minus the value of the collateral sold.  The genuine issue of material fact revolved around the reasonableness of the process to repossess the collateral securing the debt and the value obtained by General Electric in the subsequent sale.  If it were found that General Electric was unreasonable, and they could have gotten more value for the collateral, that would only affect the remaining deficiency under the loan, not the fact that Nucor was liable for the full amount promised under the note.   In this case, defendant did not foreclose on the property, and therefore, there is no issue as to whether defendant obtained reasonable value for the property.  Like in *General Electric*, defendant is still entitled to the full value owed under the Note.  The Obligors do not bring forth substantial evidence to show that defendant agreed to any deals to replace the original loan amount with a lesser amount.  Thus, no genuine issue of material fact exists as to whether defendant failed to reasonably mitigate its damages, and therefore, summary judgment is due to be granted.

**Conclusion**

Having considered all of the foregoing, the court is of the opinion that

defendant's motion for partial summary judgment (doc. 47) is due to be

**GRANTED** on all counts, and the court shall so rule by separate order.

**DONE** and **ORDERED** this the 22nd of March 2011.


_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE